# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

NANCY HEAD,

        *Plaintiff,*

  vs.

                                    Case No. 14-CV-1363-EFM-KMH

OCWEN LOAN SERVICING, LLC,

        *Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Nancy Head brought this lawsuit against Ocwen Loan Servicing, LLC ("Ocwen"), alleging that Ocwen committed several statutory violations while servicing her note and mortgage.  Ocwen has moved to dismiss Head's Fair Debt Collections Practices Act ("FDCPA") count under Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons stated below, the Court grants in part and denies in part Defendant's Motion to Dismiss Count II of Plaintiff's Complaint (Doc. 4).

## I.       Factual and Procedural Background

Head sets out the following facts and allegations in her complaint.  On March 13, 2003, Head executed a note that was secured by a mortgage on certain real property.  Initially, Option One Mortgage serviced the note and mortgage.  Sometime thereafter, Homeward Residential, Inc. ("Homeward") took over servicing of the note and mortgage.  On January 17, 2013,

Homeward sent Head a letter advising her she was in default under the security agreement's terms.  Homeward then transferred servicing to Ocwen on January 28, 2013.

Less than two months later, Head received the first of a series of letters requesting a set amount of money that she labels as either a "past due notice" or "notice of default."  Ocwen sent Head these letters on or about March 22, 2013; May 4, 2013; November 2, 2013; and December 4, 2013.  During this period of time, Head continued to make her normal monthly payments.

On June 6, 2013, Head sent a letter to Ocwen, asking for information about the missed payments and stating that she never missed a payment since 2003.  Head alleges the June 6, 2013 letter can be treated as a "request for verification of the debt as well as a qualified written request."[1]  On July 3, 2013, Ocwen acknowledged that it received Head's letter and advised that it would respond under the Real Estate Settlement Procedures Act.[2]  However, Ocwen never responded to Head's request.

Head alleges that Ocwen repeatedly has misrepresented the amount due under her mortgage and "repeatedly [has] contacted [her] in an attempt to collect the debt."[3]  Head further alleges that Ocwen's continued contact with her without verification of the debt violates the FDCPA.  Head also alleges that Ocwen has threatened foreclosure in order to collect the debt "when foreclosure is not justified."[4]  Head claims that she "has suffered damages due to the worry and emotional distress" resulting from Ocwen's alleged actions.[5]

---

[1] Plaintiff's Complaint, Doc. 1, ¶ 26.

[2] Plaintiff also brings an individual claim under the Real Estate Settlement Procedures Act (Count I of the Complaint) that Ocwen's motion to dismiss does not challenge.

[3] Plaintiff's Complaint, Doc. 1, ¶ 23.

[4] Plaintiff's Complaint, Doc. 1, ¶ 24.

[5] Plaintiff's Complaint, Doc. 1, ¶ 25.

## II.    Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[6]  Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[7]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court reasonably to infer that the defendant is liable for the alleged misconduct.[8]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[9]  Under 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[10]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[11]  If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[12]

---

[6] Fed. R. Civ. P. 12(b)(6).

[7] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[8] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 566 U.S. at 556).

[9] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[10] *Iqbal*, 556 U.S. at 678-79.

[11] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[12] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 566 U.S. at 570).

### III.     Analysis

The FDCPA was enacted to eliminate abusive debt collection practices.[13]   To eliminate abusive debt collection practices, the FDCPA regulates interactions between consumer debtors and "debt collectors."[14]   The FDCPA does not "prohibit a debt collector from merely attempting to collect on a debt.   Nor are threats to take legal action or to report a debtor to credit agencies actionable, unless the action threatened cannot legally be taken, is not intended to be taken, or involves the communication of false information."[15]   Head alleges such violations.   Ocwen contends that Head's allegations are time-barred, that Ocwen is not a "debt collector" under the FDCPA, and that Head does not plead sufficient facts to state a plausible claim for relief.[16]   Head responds that the November 2, 2013 and December 4, 2013 letters from Ocwen are not time-barred, that Ocwen is a "debt collector" under the FDCPA, and that there are sufficient facts that would allow a plausible claim for relief under §§ 1692e and 1692g.

### A.  Head Sufficiently Pleads Discrete Acts Within the Statute of Limitations Period

Although the statute of limitations is an affirmative defense, it properly may be resolved on a motion to dismiss "when the dates given in the complaint make clear that the right sued

---

[13] *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 577 (2010).

[14] *Id.*

[15] *Lacey v. Ocwen Loan Servicing, LLC*, 2014 WL 2885471, at *2 (D. Kan. 2014) (citing *Whayne v. United States Dep't of Educ.*, 915 F. Supp. 1143, 1145 (D. Kan. 1996)).

[16] Ocwen also argued in its reply brief that because Head did not respond to certain arguments that it raised in its memorandum in support, Head effectively waived arguments against dismissal on those bases.   Ocwen cites *Montoya v. Fin. Fed. Credit, Inc.*, 872 F. Supp. 2d 1251 (D.N.M. 2012) for support of its waiver argument. *Montoya*, however, did not actually apply such a rule.   Its supporting authority, moreover, recognized waiver under completely dissimilar circumstances.  *See Marlin Oil Corp. v. Lurie*, 417 F. App'x 740, 744 n.10 (10th Cir. 2011) (noting that "because Lurie never raised this argument before the district court in its response to Marlin's motion for summary judgment, we consider it waived [on appeal].").

upon has been extinguished."[17]  " 'An action to enforce any liability created by [the FDCPA] may be brought . . . within one year from the date on which the violation occurs.' "[18]  Due to the comprehensive scheme of the FDCPA that makes many debt collection maneuvers actionable, separate debt collection communications concerning a single debt can create separate violations supporting a cause of action.[19]  Therefore, for statute of limitations purposes, discrete violations of the FDCPA are analyzed individually.[20]  The improper communication must occur within the limitation period to be actionable.[21]  A later effect of an earlier time-barred violation is not actionable.[22]  If a defendant engages in a series of prohibited acts, a fresh violation occurs at the moment of each act.[23]

Here, Head filed her complaint on November 3, 2014.  Head concedes that Ocwen's November 2, 2013 and December 4, 2013 letters are the only communications arguably occurring within the one year preceding the filing of her complaint.  Head also believes discovery will reveal additional violations beyond Ocwen's letters.  While the Court agrees that Ocwen's November 2, 2013 and December 4, 2013 letters are within the one-year FDCPA

---

[17] *Solomon v. HSBC Mortg. Corp.*, 395 F. App'x 494, 497 (10th Cir. 2010) (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980)).

[18] *Johnson v. Riddle*, 305 F.3d 1107, 1113 (10th Cir. 2002) (quoting 15 U.S.C. § 1692k(d)).

[19] *Solomon*, 395 F. App'x at 497.

[20] *Id.*

[21] *See Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1189 (10th Cir. 2013).

[22] *See Solomon*, 395 F. App'x at 497 n.3 (distinguishing discrete violation from continuing violation analysis).

[23] *Craig v. Meyers*, 2009 WL 3418685, at *3-4 (S.D. Ohio Oct. 19, 2009).

limitations period,[24] the Court considers Head's speculation of additional, discoverable violations irrelevant to this motion to dismiss.[25]   As each letter is a discrete act that independently could constitute a violation of the FDCPA, not requiring the previous letters in order to state a sufficient claim, Head may continue her case, but limited only to claims arising from the November 2, 2013 and December 4, 2013 letters.

While Ocwen argues that the limitations period does not restart for new communications repeating a stale violation, its support found in *Michalak v. LVNV Funding, LLC*, is misplaced.[26] The court in *Michalak* held that dunning letters allegedly received within the one-year limitations period would not permit Michalak to raise FDCPA claims based on letters received outside the one-year period.   Specifically, the court rejected Michalak's argument that the recent dunning letters constituted a continuing violation and thus restarted the statute of limitations period with each new letter, making claims based on the stale letters actionable.   Were Head asserting, as Michalak asserted, a continuing violation theory, *Michalak*'s reasoning might assist this Court's determination.[27]   But Michalak did not argue, as Head argues, that those letters received within the limitations period qualify as discrete violations.   Moreover, the Sixth Circuit later overturned *Michalak* to hold, as this Court decides, that each letter may constitute a separate violation of the

---

[24] Though the November 2, 2013 letter appears to fall outside the one-year preceding Head's November 3, 2014 complaint, the day of the violation is excluded in calculating the running of the statute of limitations.   *See Johnson*, 305 F.3d at 1115 .

[25] When considering a Rule 12(b)(6) motion, the court must limit itself to the four-corners of the complaint.   *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010).

[26] 2014 WL 1775496 (N.D. Ohio Apr. 24, 2014).

[27] *Id.* at *2 (emphasis added).

FDCPA and so only those letters outside of the one-year limitation period are barred.[28] *Michalak*, therefore, cannot guide this Court.

Ocwen further argues that to be "discrete violations" that the court must analyze separately for compliance with the FDCPA's limitations period, Head must plead violations of separate provisions of the FDCPA, not multiple communications that allegedly violate the same provision. Ocwen cites *Solomon v. HSBC Mortgage Corporation* as support.[29] *Solomon* directs that "[f]or statute-of-limitation purposes, discrete violations of the FDCPA should be analyzed on an individual basis."[30] But *Solomon* does not define "discrete violations." So the parties provide their own interpretation. Ocwen bases its provision-specific understanding of "discrete violations" on the fact that *Solomon*'s statute of limitations analysis discusses "kinds of violations."[31] Specifically, *Solomon*'s limitations analysis reads the plaintiff's complaint to allege violations of three different FDCPA provisions. While Ocwen fairly restates the court's discussion in *Solomon*, it unfairly overlooks the nine cases that the Tenth Circuit cites to support its statement that courts must individually analyze discrete violations. A review of these cases reveals that the Tenth Circuit did not intend "discrete" only to mean "kinds of violations."

In fact, all of the cited cases discuss repetitious dunning communications that allegedly violated the same FDCPA provisions. In *Ortiz v. Accounts Receivable Management, Inc.*, the plaintiff alleged that defendant violated the FDCPA by repeatedly calling and leaving a

---

[28] *Michalak v. LVNV Funding, LLC*, 2015 WL 2214792, at *1 (6th Cir. May 12, 2015) (citing *Solomon*, 395 F. App'x at 497 n.3).

[29] 395 F. App'x 494.

[30] *Id.* at 497.

[31] *Id.* at 498.

prerecorded voicemail message attempting to collect a debt.[32]  The plaintiff conceded, like Head

has done in this suit, that there were communications outside of the limitations period, but still

argued that he should be able to continue his suit on the timely violations.[33]  Agreeing with the

plaintiff, the court dismissed the eleven phone calls received outside of the limitations, but

allowed the plaintiff to proceed on FDCPA violations associated with the later phone calls that

were received within the statutory period.[34]

      In *Purnell v. Arrow Financial Services, LLC*, the defendant repeatedly reported an

unverified debt to a credit bureau (eleven monthly reports and one manual debt confirmation),

each of which plaintiff contended individually violated §§ 1692e and 1692f of the FDCPA

within the statutory period.[35]  The court held that the plaintiff could continue his suit based on

the claims that arose from the debt reports and manual debt confirmation sent within the

limitations period, using the plaintiff's contention that a violation "occurs with each

representation, communication, or collection activity," constituting a discrete violation of the

FDCPA.[36]  Therefore, each monthly reporting was a discrete violation of the same FDCPA

provision, refreshing the limitation period for that individual action.[37]

      Lastly, in *Craig v. Meyers*, the plaintiff received a demand letter and other documents

regarding post-judgment collection efforts, some of which were outside of the limitations

---

[32] 2010 WL 547910, at *1-2 (S.D. Fla. Feb. 12, 2010).

[33] *Id.* at *2.

[34] *Id.* at *1-2.

[35] 303 F. App'x 297, 299-300 (6th Cir. 2008).

[36] *See id.* at 303-04.

[37] *Id.* at 301-02.

period.[38]  Similar to Ocwen, the defendant argued that later communications were tied to the original demand letter, thereby time-barring all allegations.[39]  The court rejected the defendant's argument.[40]  Discussing *Purnell*, the court held that even if "inextricably linked" to a violation from a time-barred act, prohibited acts within the limitations period create timely claims for discrete violations that are actionable under the FDCPA.[41]  Therefore, the court allowed the plaintiff to continue on the communications that occurred within the one year period.[42]

Consistent with the Tenth Circuit's reliance on these and other opinions in *Solomon*, this Court will not accept Ocwen's invitation to narrowly interpret "discrete violations."  Such a reading would insulate debt collectors from liability for freshly committed misconduct merely because more than one year earlier they originally abused the debtor in the same manner.  An act intended "to eliminate abusive debt collection practices" would be ill-served were this Court to develop so significant a rule from such an underdeveloped discussion.[43]  Stated otherwise, this Court does not read *Solomon* to understand that Congress intended debt collectors to get a free pass to exploit debtors if, after a year of unchallenged abuse, they commit new abuse in the same old ways.  Therefore, it would be inappropriate to dismiss Head's entire complaint under the statute of limitations.  The Court will allow Head to proceed on all claims that are based on the timely November 2, 2013 and December 4, 2013 letters.

---

[38] 2009 WL 3418685, at *1-3.

[39] *Id.* at *4.

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] 15 U.S.C. § 1692(e).

Check over

## B.  Head Sufficiently Pleads That Ocwen is a "Debt Collector" Under the FDCPA

To present a claim under the FDCPA, the claimant must show that the monetary obligation in dispute is a "debt" and that the entity collecting the debt is a "debt collector."[44]  The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[45]  The FDCPA also creates multiple exceptions for the term "debt collector."[46]  An entity that does not own the loan but merely "services" the loan generally is treated as a "creditor" and not subject to the FDCPA.[47]  A servicing company is subject to the FDCPA, however, if the loan was in default at the time the servicing company acquired the loan account.[48]  The term "default" is not defined in the FDCPA.[49]  Without clarity from Congress, the determination of whether a debt is in default is to be made by the court on a case-by-case basis.[50]  Any applicable contractual or regulatory language that defines a point of default may be instructive.[51]  But language in a servicing company's notice that states that an entity is a debt

---

[44] *Mondonedo v. Sallie Mae Inc.*, 2009 WL 801784, at *3 (D. Kan. Mar. 25, 2009); *see also* 15 U.S.C. § 1692.

[45] 15 U.S.C. § 1692a(6).

[46] *See id.*

[47] *Mondonedo*, 2009 WL 801784, at *3.

[48] *Id.*

[49] "Unfortunately, the FDCPA does not define so key a term as 'default.' . . . [W]here there is no relevant contractual provision . . . between the debtor and the creditor nor any governing regulation, courts have struggled to establish when a debt is in default for purposes of . . . determining whether a party is a debt collector under the FDCPA." *Simmons v. Med–I–Claims*, 2007 WL 486879, at *7 (C.D. Ill. Feb. 9, 2007).

[50] *Church v. Accretive Health, Inc.*, 2014 WL 7184340, at *3 (S.D. Ala. Dec. 16, 2014) (quoting *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 440 (E.D.N.Y. 2013)).

[51] *Id.*

collector or is collecting the recipient's debt is some but not conclusive evidence that the servicing company is a "debt collector" subject to the FDCPA.[52]

Though Ocwen admits that it serviced Head's mortgage, it argues that Head pleads insufficient facts for this Court to regard Ocwen as a "debt collector." Specifically, Ocwen argues that Head's complaint does not support the conclusion that Head's debt was in default when Ocwen took over her account. Head expressly alleges that "Ocwen is a debt collector."[53] This conclusory statement clearly is inadequate.[54] But the Court disagrees that Head fails to plead adequate facts that show Head's mortgage was in default at the time Ocwen acquired her account. Head avers: 1) she borrowed the sum of $33,600.00 from Option One Mortgage and gave a mortgage to Option One for the amount on March 13, 2003; 2) servicing was transferred to Homeward, and she began making her payments to Homeward; 3) on January 17, 2013, Homeward sent her a letter "advising her she was in default under the terms and conditions of the security agreement;"[55] 4) on January 28, 2013, Homeward transferred servicing to Ocwen; 5) after obtaining the servicing rights, Ocwen sent her a series of letters for unpaid amounts that were characterized as "notice[s] of default" on March 22, 2013 ($1,177.48), May 4, 2013 ($1,529.06), November 2, 2013 ($2,201.16), and December 4, 2013 ($1,804.47); and 6) she continued to make her payments throughout receiving the "notice[s] of default."

---

[52] *See Maynard v. Cannon*, 401 F. App'x 389, 395 (10th Cir. 2010).

[53] Plaintiff's Complaint, Doc. 1, ¶ 21.

[54] *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

[55] Plaintiff's Complaint, Doc. 1, ¶ 8.

On the Complaint's face, the factual allegations that Head presents (which are accepted as true under a Rule 12(b)(6) motion) satisfy her modest Rule 8 pleading burden.  Through these stated facts, the Court finds it plausible that Homeward considered the debt in default under the terms of the security agreement on January 17, 2013.  The Court also makes the reasonable inference that that the debt remained in default when transferred to Ocwen less than two weeks later.  Head alleges no facts that would contradict this reasonable inference, and her allegation that Ocwen later sent her "notices of default" demanding past due payment supports the inference.  Thus, Head adequately pleads facts plausibly supporting that Ocwen is a "debt collector."

The Court reaches this conclusion despite Ocwen's argument that her complaint specifically does not state that the loan was in default at the time Ocwen received servicing rights.  While it would have been helpful for Head to explicitly plead that information in her complaint, the law does not require her to include every relevant fact on the issue of default in her pleading.[56]  Head's allegations, though lacking the specificity that Ocwen desires, do all that Rule 12(b)(6) requires.

Similarly, this Court's inference that Ocwen received the debt in default is not undermined, as Ocwen urges, by Head's allegations that she stayed current with her mortgage payments.  First, this Court agrees with the Sixth Circuit's observation that "FDCPA coverage is not defeated" when "after having engaged in years of collection activity *claiming a mortgage is in default*, [d]efendants now seek to defeat the protections of the FDCPA by relying on

---

[56] *See* Fed. R. Civ. P. 8(a)(2); *see also Twombly*, 550 U.S. at 555.

[p]laintiffs' position throughout those years that *the mortgage is not in default*."[57]  Second, the parties agree that the law considers a mortgage servicer a "debt collector," despite what the actual status of the debt is, if that servicing company was mistaken as to the status of the debt and treated the account as though it were in default.[58]  Therefore, if Ocwen mistakenly regarded Head's account as being in default and accordingly attempted collection, the § 1692a(6)(F)(iii) exclusion does not prevent this Court from treating Ocwen as a "debt collector."  Head's allegations that Ocwen sent her "notices of default" demanding specific overdue payments permit this Court to infer that Ocwen treated the debt as being in default.  Accordingly, dismissal of Head's FDCPA claims on this basis is unwarranted.

## C.  Head Sufficiently Pleads FDCPA Violations

Though Head's complaint does not state the exact FDCPA provisions Ocwen allegedly violated, Head's responsive brief clarifies that her FDCPA claim is based on violations of §§ 1692e and 1692g.  Specifically, Head claims that Ocwen violated the FDCPA by "1) misrepresenting the amount of the mortgage payments due and the debt owed; 2) failing to validate the debt when requested by letter on June 6, 2013."[59]  Therefore, the Court will address only whether Head sufficiently pled enough facts to bring a plausible claim of relief under §§ 1692e and 1692g.

When analyzing claims under the FDCPA, courts generally apply an objective standard, "measured by how the 'least sophisticated consumer' would interpret the notice received from

---

[57] *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 361 (6th Cir. 2012) (emphasis original).

[58] *Mondonedo*, 2008 WL 4491409, at *3.

[59] Plaintiff's Response, Doc. 10, p. 2, ¶ 4.  Plaintiff later states she is suing under 15 U.S.C. §§ 1692e and 1692g.

the debt collector."[60]   The test examines how "the least sophisticated consumer—one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer—understands the notice he or she receives."[61]   However, the hypothetical consumer "can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care."[62]

**1. Section 1692e**

Head alleges facts arguably supporting violations of 15 U.S.C. §§ 1692e(2)(A) and (5). Section 1692e states that it is unlawful for a debt collector to "use any false, deceptive, or misleading representation . . . in connection with the collection of any debt."   Section 1692e(2)(A) prohibits false representations as to "the character, amount, or legal status of any debt."   Section 1692e(5) states that it is unlawful for a debt collector to make "threat[s] to take any action that cannot legally be taken or that is not intended to be taken."   The list of conduct or practices violating § 1692e is non-exhaustive, and a debt collection practice can violate the FDCPA even if it is not named within a specific subsection.[63]

*a. Section 1692e(2)(A)*

Head alleges that Ocwen misrepresented the amount and character of her debt. Specifically, Head contends that, despite making her scheduled monthly payments on the debt, Ocwen sent her numerous notices of default.   While Head's complaint does not state exactly how

---

[60] *Ferree v. Marianos*, 1997 WL 687693, at *1 (10th Cir. Nov. 3, 1997) (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996)).

[61] *Id.*

[62] *Id.* (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)).

[63] *Caputo v. Prof'l Recovery Servs., Inc.*, 261 F. Supp. 2d 1249, 1255 (D. Kan. 2003).

-14-

Ocwen misrepresented the debt, this is not a requirement under Rule 8.[64]  Head's complaint does aver that she regularly paid her mortgage and still received numerous notices of default.  Head also avers that she requested information from Ocwen about supposed missed payments, but received no response.  The least sophisticated consumer that regularly makes her mortgage payments and then receives notices of default demanding additional unpaid amounts reasonably would consider such communications to be in error.  That consumer reasonably could understand that the debt collector inappropriately treated her loan as being in default despite her being current with payments or, alternatively, that she is not current with her payments because the debt collector previously misstated the amounts due.  And the debt collector's failure to clarify the support for its demands on a valid request would sustain the consumer's concern that the debt collector has mismanaged its account.  These facts allow the Court reasonably to conclude that Ocwen was either misrepresenting the amount or status of Head's debt in violation of § 1692e(2)(A).  Further, Ocwen only challenges Head's § 1692e(2)(A) claim on the above-rejected basis that it is time-barred.  Therefore, the Court finds that Head sufficiently pleads a claim under § 1692e(2)(A).

> ### b.  Section 1692e(5)

Head also alleges that "Ocwen is threatening foreclosure in an effort to collect a debt when foreclosure is not justified."[65]  While a plaintiff does not have to plead with specificity, only plausibility, Head's allegation that Ocwen is threatening unjustifiable legal action is merely conclusory.  Section 1692e(5) requires that, within the one-year limitations period, there be a

---

[64] *See Iqbal*, 556 U.S. at 678.

[65] Plaintiff's Complaint, Doc. 1, ¶ 24.

threat to take action that "cannot legally be taken or that is not intended to be taken."  Head's statement that the threat of foreclosure is "not justified" omits necessary factual allegations.  For example, Head fails to indicate when she received Ocwen's threat, thus preventing the Court from determining her compliance with the statute of limitations.  Further, Head's allegation does not state how Ocwen's threat of foreclosure cannot legally be taken or was not intended to be taken.  Without this information, the Court cannot determine how "the least sophisticated consumer . . . [would] understand[] the notice he or she receive[d]."[66]

For example, in *Little v. Portfolio Recovery Associates, LLC*, the Tenth Circuit rejected Little's § 1692e(5) claim.[67]  Little alleged that "[d]efendant's agent falsely stated that if the debt was not paid 'it will go further.'  When asked by [p]laintiff what that meant, [d]efendant's collector falsely stated that 'it will go to litigation' and 'we will take you to court.' "[68]  Despite pleading specific facts about the threatening statements, the Tenth Circuit determined that Little's pleading was conclusory and did not "allege[] any facts supporting an inference that [defendant]'s threats to litigate were legally proscribed or not made in good faith."[69]  While courts are allowed to make all reasonable inferences in the light most favorable to the plaintiff, they may not accept as true any legal conclusions. [70]  Head pleads a legal conclusion even more factually bare than Little's rejected pleading.  Therefore, the Court concludes that Head fails to

---

[66] *Ferree*, 1997 WL 687693, at *1.

[67] 548 F. App'x 514, 516 (10th Cir. 2013).

[68] *Id.*

[69] *Id.*

[70] *Twombly*, 550 U.S. at 555 (". . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citation omitted).

nudge her 1692e(5) claim from conceivable to plausible and grants Ocwen's motion to dismiss as to Head's 1692e(5) claim.

### 2. Section 1692g

Head's final FDCPA allegation suggests that Ocwen violated § 1692g of the FDCPA by "fail[ing] to verify the debt and [by] continu[ing] its contact with Head without proper verification of the debt."[71]   Section 1692g requires that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing" certain information about the debt, including the amount of debt and to whom the debt is owed.[72]   If the consumer "notifies the debt collector in writing within the thirty-day period [after receipt of the notice] that the debt . . . is disputed, the debt collector will obtain verification of the debt . . . and a copy of such verification . . . will be mailed to the consumer by the debt collector."[73]   If the consumer notifies the debt collector within the thirty-day period, the debt collector shall cease collection of the debt until the debt collector obtains verification of the debt and the verification is mailed to the consumer.[74]

While Head contends that Ocwen is required to give verification under § 1692g, Head must first have, "within thirty days after receipt of the notice, dispute[d] the validity of the debt . . . [otherwise] the debt will be assumed to be valid by the debt collector."[75]   Head alleges that

---

[71] Plaintiff's Complaint, Doc. 1, ¶ 27.

[72] 15 U.S.C. § 1692g(a).

[73] 15 U.S.C. § 1692g(a)(4).

[74] 15 U.S.C. § 1692g(b).

[75] 15 U.S.C. § 1692g(a)(3).

Ocwen first contacted her in its March 22, 2013 "past due notice" letter.[76]   This event would trigger the beginning of the thirty-day period in which Head had to request verification of the debt.[77]   Head alleges that she first responded to Ocwen with a June 6, 2013 letter.   Even accepting that Head's June 6, 2013 letter "disputed the validity of the debt," Head sent that request outside of the thirty-day period.   Because Head does not allege that she sent another letter within the thirty-day period after the receipt of Ocwen's communication, Ocwen is not required to cease any collection efforts.[78]   Thus, Head's claim that Ocwen was required to do so fails.   Ocwen's motion to dismiss as to the § 1692g claim is hereby granted.

## IV.    Conclusion

For the reasons set forth above, Head may continue her suit on any well-pleaded claims that arise from Ocwen's November 2, 2013 and December 4, 2013 letters.   Any claims related to prior letters are dismissed.   Any §§ 1692e(5) and 1692g claims are dismissed, and the Court denies as inadequate Head's one-sentence request for leave to amend.[79]   But Head has pled sufficient facts to consider plausible that Ocwen is a "debt collector" under the FDCPA and therefore liable for Head's well-pled § 1692e(2)(A) violation of the FDCPA.   The Court's decision in this Order that Head adequately pleads that Ocwen, a "debt collector," violated § 1692e(2)(A) should not be understood to mean that the Court accepts that Ocwen *in fact* acted as a "debt collector" and violated the FDCPA.   It is still Head's burden to provide adequate

---

[76] Plaintiff's Complaint, Doc. 1, ¶ 10.

[77] *See* 15 U.S.C. § 1692g(b); *McCammon v. Bibler, Newman & Reynolds, P.A.*, 515 F. Supp. 2d 1220, 1225 (D. Kan. 2007).

[78] *See* 15 U.S.C. § 1692g(b).

[79] *See In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1118–19 (10th Cir. 2015) (holding that plaintiff's request for leave to amend was insufficient when it contained "only one sentence at the very end of his brief alternatively requesting leave to amend in the event the district court should decide to dismiss his complaint.").

evidence to support this conclusion.  Here, the Court merely decides that the facts in Head's complaint make such a conclusion plausible.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Count II of Plaintiff's Complaint (Doc. 4) is **GRANTED IN PART AND DENIED IN PART**. Defendant's motion to dismiss is **GRANTED** as to the claims brought pursuant to 15 U.S.C. §§ 1692e(5) and 1692g.  In regards to all other claims, the motion is **DENIED**.

**IT IS SO ORDERED.**

Dated this 14th day of July, 2015.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE